# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NARY KHENG, ) | |
| ) | |
| Plaintiff, ) | Case No. 08 C 03786 |
| ) | |
| v. ) | Magistrate Judge Susan E. Cox |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Nary Kheng ("plaintiff") seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("SSA"). The parties have filed Cross-Motions for Summary Judgment; plaintiff seeks reversal or remand, while the Commissioner moves the Court to affirm the decision below. For the reasons discussed herein, plaintiff's motion is denied [dkt 17] and the Commissioner's motion is granted [dkt 24].

## I. PROCEDURAL HISTORY

March 31, 2004 was the last date on which plaintiff was eligible to receive DIB.[1] Plaintiff applied for DIB on August 6, 2004, claiming a disability onset date of May 1, 1998.[2] Plaintiff later amended the disability onset date to February 1, 2003.[3] Plaintiff alleged that diabetes, hepatitis B, depression, and Post-Traumatic Stress Disorder ("PTSD") rendered her incapable of pursuing

---

[1] R. at 73.
[2] R. at 63.
[3] R. at 14.

gainful employment.[4] Plaintiff has since attributed her disability solely to mental impairments. After her application was denied on October 8, 2004 and reconsideration was denied on February 4, 2005, plaintiff was granted a hearing before an administrative law judge ("ALJ").[5] On January 17, 2007, plaintiff appeared before ALJ John Kraybill, who determined that plaintiff was not disabled as of March 31, 2004.[6] The Appeals Council affirmed the ALJ's decision on May 8, 2008, and plaintiff filed this action on July 2, 2008.[7]

## II. STATEMENT OF FACTS

Born on July 5, 1962, plaintiff was 44 years old when she appeared before the ALJ.[8] Plaintiff has a 10th grade education and worked as a factory employee for several years before acquiring two video stores with her husband.[9] Plaintiff operated one of the stores, while her husband operated the other.[10] Plaintiff alleges that her disability forced her to close her store in 2001.[11] Plaintiff has not been employed since that time.[12]

**A. Medical History**

The date on which plaintiff was last insured ("DLI") is March 31, 2004.[13] Prior to the DLI, plaintiff was evaluated by Marcia R. Katz, M.D. ("Dr. Katz"), of Chicago Health Outreach.[14] On December 19, 2002, Dr. Katz noted that plaintiff had been experiencing nervousness, poor concentration, and forgetfulness for the past 1-2 months.[15] Dr. Katz suspected that plaintiff might

---

[4] R. at 76
[5] R. at 38, 48, 54.
[6] R. at 14.
[7] R. at 1-3.
[8] R. at 37.
[9] R. at 77, 82.
[10] R. at 662.
[11] R. at 661.
[12] R. at 669.
[13] R. at 73.
[14] R. at 328.
[15] *Id*.

have an "underlying anxiety disorder," and observed that plaintiff had previously "shown signs of somatic type [symptoms]."[16]

The next record of plaintiff's mental health condition appears after the DLI. On April 22, 2004, Dr. Katz noted that plaintiff was "feeling overwhelmed" and "tearful often," and that plaintiff had been scheduled for a mental health evaluation at Asian Human Services.[17] Plaintiff's "Client Problem List" at Chicago Health Outreach lists "depression, PTSD" in April 2004, and is initialed by Dr. Katz.[18]

Later that year, on October 26, 2004, Dr. Katz diagnosed plaintiff with acute traumatic family loss, stemming from her brother's suicide two days prior.[19] Plaintiff was subsequently referred to Kathleen Allen, LCPC ("Allen"), who conducted a mental health assessment of plaintiff on February 16, 2005.[20] Plaintiff told Allen that she would scream, sweat, and talk to herself in her sleep, and that she had been "scratching [herself] with a coin" for the past two years.[21] Plaintiff traced these actions back to her experiences during the Khmer Rouge regime in Cambodia in the 1970s, before she arrived in the United States in 1981.[22] Plaintiff described the deaths of both parents and three siblings during the war and subsequent occupation.[23] She explained to Allen that her symptoms had been growing "progressively worse over the last several [years], especially the last 2," and that she was "devastated by the suicide of her younger brother 1½ [months] ago."[24] Allen determined plaintiff's Global Assessment of Functioning score to be 50, which denotes "serious

---

[16]*Id.*
[17]R. at 226.
[18]R. at 302
[19]R. at 225.
[20]R. at 500-505.
[21]R. at 500.
[22]*Id.*
[23]*Id.*
[24]R. at 500; *See* American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders IV-TR, 34 (4th ed. 2000).

symptoms or any serious impairment in social, occupational, or school settings."[25] Allen also diagnosed plaintiff with PTSD, and began treating plaintiff on a weekly basis.[26] Allen subsequently referred plaintiff to a psychiatrist, Raymond Gouttama, M.D. ("Dr. Gouttama"), who diagnosed plaintiff with PTSD on September 19, 2005.[27]

**B. January 17, 2007 Hearing Before the ALJ**

On January 17, 2007, plaintiff appeared before the ALJ along with two expert witnesses, Allen and Carl Leigh, M.D. ("Dr. Leigh").[28] The ALJ first questioned plaintiff regarding the details of her living conditions. Plaintiff testified that she regularly used the medication Lexapro, prescribed by Dr. Gouttama, in order to mitigate the effects of her depression and nightmares.[29] Plaintiff explained that many of her thoughts and dreams focused on the torture she experienced as a teenager in Cambodia.[30] She noted that her prescribed dosage of Lexapro had been increased twice to alleviate the persistent symptoms.[31] Plaintiff also testified that she was forced to close her video store in 2001 because her nightmares and physical sickness prevented her from working.[32] She had more recently attempted to help out at her husband's video store, but would constantly shake and charge customers the wrong price.[33]

The ALJ next questioned Allen, who had been treating plaintiff since diagnosing her with PTSD in February 2005. In her testimony, Allen confirmed Dr. Gouttama's diagnosis of PTSD and described plaintiff's treatment program.[34] Allen explained that plaintiff was taking Lexapro instead

---

[25]R. at 504.
[26]R. at 506-16, 606-54.
[27]R. at 518.
[28]R. at 656-88.
[29]R. at 661.
[30]R. at 664.
[31]R. at 668.
[32]R. at 661-62.
[33]R. at 665.
[34]R. at 670, 672.

of Zoloft, which may have been a more appropriate PTSD medication, because plaintiff's brother had committed suicide with Zoloft.[35] Allen also testified that while plaintiff's symptoms had been severe at the start of her treatment, they were gradually lessening over time.[36] According to Allen, however, plaintiff still remained largely incapable of performing the day-to-day functions of cooking, cleaning, and parenting.[37] Plaintiff's memories overwhelmed her and prevented her from sustaining any meaningful relationships.[38]

The ALJ lastly questioned Dr. Leigh, who testified that plaintiff's physical impairments of diabetes and hepatitis B were non-severe because there was "no evidence of cirrhosis or liver damage, or end-organ damage, and creatin levels were normal."[39] Plaintiff has since limited the source of her disability to her mental impairments.

**C. ALJ's February 12, 2007 Decision**

On February 12, 2007, the ALJ determined that plaintiff was not disabled under sections 216(i) and 223(d) of the SSA as of the DLI and was, thus, not entitled to DIB.[40] Under the SSA, disability is defined as the inability to engage in any substantial gainful activity ("SGA") by reason of any medically determinable physical or mental impairment, or combination of impairments, that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.[41] The ALJ's decision followed the five-step sequential evaluation process outlined in 20 C.F.R. § 404.1520(a).[42]

---

[35] R. at 672.
[36] *Id.*
[37] R. at 674.
[38] *Id.*
[39] R. at 680.
[40] R. at 14.
[41] 42 U.S.C. § 423(d)(1)(A).
[42] R. at 15-16.

Under the first step, the ALJ determined that plaintiff had not engaged in SGA during the period from her alleged onset date of February 1, 2003, through her DLI of March 31, 2004.[43] Under the second step, however, the ALJ found that through the DLI, plaintiff did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months.[44] The ALJ thus concluded that plaintiff was not disabled for purposes of receiving DIB.[45]

The ALJ reached this conclusion after determining that plaintiff's physical impairments were non-severe and that plaintiff's mental impairments and treatment arose after the DLI. The ALJ relied on Dr. Leigh's testimony in concluding the physical impairments to be non-severe.[46] Plaintiff does not contest this finding. The ALJ also found plaintiff's mental impairments to be non-severe prior to the DLI because plaintiff's psychiatric treatment did not begin until after her brother's suicide in October 2004, an event that plaintiff agrees intensified her psychiatric problems.[47] The ALJ observed that progress notes dated shortly after the DLI only recorded less debilitating psychiatric problems, such as "allergies, fatigue, depression, complaints of feeling overwhelmed, and tearful often."[48] More severe diagnoses were not recorded until almost a year after the DLI, in the aftermath of plaintiff's brother's suicide.[49] The ALJ thus found plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms… not entirely credible, in light of the objective medical evidence."[50] For these reasons, the ALJ denied plaintiff DIB.

---

[43] R. at 16.
[44] *Id.*
[45] *Id.*
[46] R. at 18.
[47] *Id.*
[48] *Id.*
[49] *Id.*
[50] *Id.*

## III. STANDARD OF REVIEW

The Court will uphold the ALJ's decision if it is supported by substantial evidence and is free from legal error.[51] Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion."[52] The Court may not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner."[53] Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the courts.[54]

## IV. SOCIAL SECURITY REGULATIONS

The SSA prescribes a sequential five-step test for determining whether a claimant is disabled. The ALJ must consider: (1) whether the claimant is engaged in SGA; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude gainful activity; (4) based on the claimant's residual functioning capacity, whether the claimant is unable to perform her past relevant work; and (5) whether the claimant is unable to perform any other work existing in significant numbers in the national economy.[55]

## V. ANALYSIS

Plaintiff argues that the Court should reverse or remand the ALJ's decision because the ALJ: (1) ignored the hearing testimony of plaintiff's therapist, Allen; (2) failed to call a medical advisor to determine plaintiff's disability onset date in violation of SSR 83-20; (3) improperly employed a boilerplate credibility determination of plaintiff's hearing testimony; (4) improperly

---

[51] 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).
[52] *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000).
[53] *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).
[54] *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987).
[55] *Young v. Sec'y of Health and Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

determined that plaintiff did not suffer from a severe impairment; and (5) failed to consider reports by Dr. Gouttama and Allen asserting that plaintiff's impairment satisfied a step 3 listing under the SSA.

**A. ALJ's Omission of Allen's Hearing Testimony**

Plaintiff first argues that the ALJ's decision is not supported by substantial evidence because the ALJ did not mention Allen's testimony in his decision denying plaintiff DIB. Because meaningful review requires the ALJ to articulate reasons for accepting or rejecting entire lines of relevant evidence, plaintiff argues that the ALJ may not "select and discuss only that evidence that favors his ultimate conclusion."[56]

Allen's testimony, however, did not address the relevant issue: plaintiff's mental condition prior to the DLI. Instead, her testimony was limited to plaintiff's condition and treatment after the DLI. In his decision, the ALJ discussed the post-DLI evidence in the record, including Allen's mental health assessment of plaintiff.[57] But he discounted the weight of this evidence because plaintiff did not seek any form of mental health treatment until almost a year after the DLI.[58] In addition, she began treatment shortly after her brother's suicide, an experience that plaintiff admits greatly "exacerbated" her symptoms.[59] The ALJ thus reasonably attributed much of the worsening of plaintiff's symptoms to the intervening event of her brother's death, rather than to the PTSD stemming from plaintiff's experiences in Cambodia. This conclusion was bolstered by the fact that plaintiff's sole prescription was for an anti-depressant, Lexapro, and not a drug specifically targeting PTSD.[60]

---

[56]*See Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).
[57]R. at 18.
[58]*Id.*
[59]*Id.*
[60]*Id.*

Plaintiff also argues that an analysis of Allen's credibility is necessary to determine the reliability of Allen's treatment note mentioning that plaintiff's PTSD had been worsening for two years prior to February 2005. But because the note represents plaintiff's recollection of her own deteriorating condition, its reliability rests upon the credibility of plaintiff, not Allen.[61] The omission of Allen's hearing testimony from the ALJ's decision is, thus, supported by substantial evidence.

**B. ALJ's Decision Not to Call a Medical Advisor**

Plaintiff next argues that the ALJ violated SSR 83-20 by refraining from calling upon a medical advisor to infer a disability onset date. SSR 83-20 states that "at the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred."[62] SSR 83-20, however, addresses the situation in which an ALJ determines a claimant to be disabled as of an application date but finds it "still necessary to ascertain whether the disability arose prior to an even earlier date-normally, when the claimant was last insured."[63] SSR 83-20, moreover, does not impose a requirement upon the ALJ to consult with a medical advisor to infer an onset date.[64] Rather, "it describes something the ALJ 'should' do, rather than something he or she 'must' do or 'shall' do, implying that the ultimate decision is up to the ALJ."[65]

At the hearing, the ALJ remarked that "we've got a lot of information that came into [*sic*] today and I haven't had a whole lot of time to look at that."[66] Based on his limited review of the record at the time, the ALJ initially considered consulting a medical advisor "in order to see if we can get around the DLI."[67] But after reviewing the entire record, the ALJ concluded that plaintiff only suffered from "mild" impairments as of the DLI because her more serious symptoms did not

---

[61]R. at 500.
[62]SSR 83-20.
[63]*Eichstadt v. Astrue*, 534 F.3d 663, 666 (7th Cir. 2008).
[64]*Eichstadt*, 534 F.3d at 667.
[65]*Id*.
[66]R. at 686.
[67]R. at 681.

surface until nearly a year after the DLI, following her brother's suicide.[68] Since the record provided sufficient evidence for the ALJ to determine that plaintiff's impairments, even shortly after the DLI, were not severe, a medical advisor was not "necessary to ascertain whether the disability arose prior [to the DLI]."[69] As such, the ALJ's "ultimate decision" not to call a medical advisor in this case was supported by substantial evidence.[70]

**C. ALJ's Credibility Determination**

Plaintiff asserts that the ALJ made a boilerplate credibility determination of plaintiff's testimony in violation of SSR 96-7p, which states: "[i]t is…not enough for the adjudicator to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record..."[71] Plaintiff argues that the ALJ simply recited the factors to be considered for determining credibility without addressing plaintiff's testimony.

An ALJ's credibility determination is entitled to substantial deference and cannot be invalidated unless proven to be patently wrong.[72] Courts accord substantial deference to ALJs' credibility determinations because they recognize that ALJs are in "the best position to observe the witnesses."[73] A review of the ALJ's decision in this case reveals consistency with the requirements of SSR 96-7p.

The ALJ determined that plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely credible in light of the objective medical evidence throughout the entire case record.[74] To support this finding, the ALJ provided specific instances of

---

[68]R. at 18-19.
[69]*See Eichstadt*, 534 F.3d at 667.
[70]*Id.*
[71]SSR 96-7p.
[72]*Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000).
[73]*Walker v. Bowen*, 834 F.2d 635, 641 (7th Cir. 1987).
[74]R. at 18.

objective medical evidence supported by the case record that conflicted with plaintiff's claim of disablement prior to the DLI. The ALJ noted that plaintiff's claimed physical impairments of diabetes and hepatitis B were non-severe because there was "no evidence of cirrhosis or liver damage, or end-organ damage, and creatin levels were normal."[75] In addition, the ALJ remarked that all of plaintiff's pre-DLI mental health records showed non-severe symptoms and that plaintiff did not seek mental health treatment until nearly a year after the DLI, and only then in the aftermath of the suicide of plaintiff's brother.[76] Based on this medical evidence in the record, it was not "patently wrong" for the ALJ to conclude that plaintiff's testimony asserting severe impairment prior to the DLI was not entirely credible.[77] The ALJ's credibility assessment of plaintiff was thus supported by substantial evidence.

**D. ALJ's Step Two Finding of Non-Severe Impairment**

Plaintiff contends that the ALJ incorrectly determined that she did not have a severe impairment under the second step of the five-step sequential test prescribed by the SSA. Plaintiff argues that she satisfied the requirements of the second step through her hearing testimony about the debilitating nightmares she experienced pre-DLI, as well as the medical records that showed that Dr. Katz suspected an "underlying anxiety disorder" in December 2002.[78]

Step two requires a claimant to demonstrate a significantly limited ability to engage in "basic work activities," including physical functions such as walking and lifting and mental functions such as understanding and remembering simple instructions.[79] A claimant fails to demonstrate a severe impairment if she "establishes only a slight abnormality or combination of slight abnormalities

---

[75] *Id.*
[76] *Id.*
[77] *Powers*, 207 F.3d at 435.
[78] R. at 328.
[79] *Back v. Barnhart*, 63 Fed.Appx. 254, 258 (7th Cir. 2003).

which would have no more than a minimal effect on an individual's ability to work even if [her] age, education, or work experience were specifically considered."[80]

The ALJ noted that plaintiff's "psychiatric impairments and treatment all surfaced after the DLI."[81] These mental health records do not relate back to a date before the DLI except for a single mention in Allen's treatment notes, in which plaintiff asserted that her PTSD symptoms had been worsening for two years prior to February 2005.[82] Thus, the ALJ's finding of non-severe impairment before the DLI amounts to a "credibility determination in which the ALJ found other evidence more reliable than [plaintiff's] testimony."[83]

Based on the substantial deference accorded to ALJs' credibility determinations, the ALJ's finding that plaintiff's testimony was not entirely credible was supported by substantial evidence.[84] The ALJ held that plaintiff's discussion of the severity of her mental impairment before the DLI was undermined both by her failure to seek mental health treatment for nearly a year after the DLI, as well as the intervening traumatic event of her brother's suicide.[85]

In addition, the symptoms noted by Dr. Katz in December 2002 were limited to "nervousness, poor concentration, and forgetfulness," from which Dr. Katz conjectured the presence of an "underlying anxiety disorder."[86] The ALJ found no credible testimony or evidence in the record, however, to show that these symptoms resulted in more than a "minimal effect on an individual's ability to work."[87] Plaintiff, thus, failed to sufficiently satisfy her burden of proof under

---

[80]*Wolms v. Barnhart*, 71 Fed.Appx. 579, 581 (7th Cir. 2003).
[81]R. at 18.
[82]R. at 500.
[83]*King v. Barnhart*, 66 Fed.Appx. 65, 70 (7th Cir. 2003).
[84]*Powers*, 207 F.3d at 435.
[85]R. at 18.
[86]R. at 328.
[87]*See Wolms*, 71 Fed.Appx. at 581.

step two, because a "reasonable mind might accept" the ALJ's conclusion that plaintiff was not severely disabled before the DLI.[88]

**E. Allen and Dr. Gouttama Medical Reports**

Lastly, plaintiff seeks remand under 42 U.S.C. § 405(g) based on two medical reports written by Allen and Dr. Gouttama, which demonstrate that plaintiff meets the step three requirement of showing a disability listed in the SSA regulations. Plaintiff's counsel alluded to these reports at the hearing, but they were not introduced into the record and were not considered by the ALJ in making his decision.[89]

The Court may remand an action under 42 U.S.C. § 405(g) upon a "showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."[90] Plaintiff argues that these two medical reports are material because of the "reasonable probability" that the ALJ would have reached a different conclusion had the reports been considered.[91]

The ALJ, however, denied plaintiff's application for DIB on the basis that plaintiff failed to sufficiently demonstrate disability prior to the DLI on March 31, 2004.[92] The reports, on the other hand, are dated May 22, 2006 and June 5, 2006, and do not relate back to a date prior to the DLI. As such, they would merely supplement other medical documents in the record that describe plaintiff's mental impairments after the DLI. There is thus no "reasonable probability" that the ALJ would have reached a different conclusion had the reports been considered because the reports do not shed any further light on plaintiff's condition prior to the DLI.[93]

---

[88]*Clifford*, 227 F.3d at 869.
[89]R. at 686.
[90]42 U.S.C. § 405(g).
[91]*Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008).
[92]R. at 16.
[93]*Getch,* 539 F.3d at 484.

## VI. CONCLUSION

For the reasons set forth above, the Court finds that the ALJ's February 12, 2007 decision is supported by substantial evidence. Accordingly, the Court denies plaintiff's Motion for Summary Judgment [dkt 17] and grants the Commissioner's Motion for Summary Judgment [dkt 24].

**IT IS SO ORDERED.**

Date: May 18, 2009

U.S. Magistrate Judge
Susan E. Cox